**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

ERIC BROWN                                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO. 1:13-CV-00176-SA-JMV

COOPER TIRE & RUBBER COMPANY, and
T.K. GROUP, INC.                                                                           DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Eric Brown initiated this action against his employer Cooper Tire & Rubber Company ("Cooper Tire") and its third party contractor T.K. Group, Inc. ("T.K. Group"), alleging claims against both Defendants under the Americans with Disabilities Act ("ADA") and against T.K. Group under Mississippi law for tortious interference with contract and negligence. Both Cooper Tire and T.K. Group have filed motions for summary judgment [64, 66]. Upon consideration of the motions, responses, rules, and authorities, the Court finds as follows:

Facts and Procedural History

While serving in the National Guard, Eric Brown discovered through military hearing tests that he suffered from high frequency hearing loss. Brown later began employment with Cooper Tire at its Tupelo plant as a utility person, filling in for other employees who were absent. Pursuant to regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), Brown and other employees at the Tupelo plant were required to undergo annual hearing tests, or audiograms, in order to determine whether their work environment caused significant hearing loss, known as a standard threshold shift ("STS"). See 29 C.F.R. § 1910.95(g). Cooper Tire contracted with T.K. Group to conduct these hearing tests. While at the plant, T.K. Group technicians administered multiple audiograms at one time, having

Cooper Tire employees sit in a booth and listen for a "beep" tone over headphones. Employees were instructed to press a button upon hearing the tone.

T.K. Group conducted Brown's first audiogram in October 2011 without incident. Brown's next audiogram was conducted by T.K. Group technicians James Younglove and Barbara Younglove on October 4, 2012. Monica Hauss, the Workers' Compensation Specialist in the human resources department at the Tupelo plant and primary contact person for T.K. Group, testified that following Brown's test, one of the technicians informed her that Brown's results were "all over the board," and that this was an indication that he was repeatedly pressing the button. Hauss asserts that she and the technician agreed Brown should be retested. However, Barbara Younglove denies ever talking with Hauss, and James Younglove testified that he never communicated the content of Brown's results to Hauss.

In any event, it is undisputed that Cooper Tire decided to proceed with a retest of Brown, which took place on October 9, 2012 and was conducted by technicians Billy Williams and Janelle Williams. Following the retest, Hauss testified that one of the technicians again stated that Brown's results were "all over the board" and that when this happens, it is usually a sign of someone "constantly hitting the button." Both Billy Williams and Janelle Williams deny making such a statement.

After the retest, Hauss reported the issues with both of Brown's tests to Cole Goodson, the plant's Production Manager, explaining, in Goodson's words, that she and the technicians felt "like he [wa]s falsifying the information . . . and just hitting the button." Goodson conducted a subsequent investigation into the hearing tests and then terminated Brown on October 22, 2012. Following his termination, Brown requested and was granted a peer review hearing before a

panel comprised of other Cooper Tire employees on December 6, 2012. The panel voted to uphold Brown's termination.

After the panel's decision, Brown filed a charge with the Equal Employment Opportunity Commission ("EEOC") and subsequently received his right-to-sue letter. He commenced this suit in September 2013, alleging that both Defendants discriminated against him on the basis of his hearing impairment in violation of the ADA.[1] Brown also brings claims against T.K. Group under Mississippi law for tortious interference with contract and for negligence. In his response to T.K. Group's Motion for Summary Judgment [66], Brown conceded his ADA claim against T.K. Group, and it is accordingly dismissed. The Court will therefore address the remaining ADA claim against Cooper Tire, before turning to the state-law claims against T.K. Group.

<u>Summary Judgment Standard</u>

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323, 106 S. Ct.

---

[1] There is some intimation by Brown in his complaint that an ankle injury he suffered while at Cooper Tire likewise constitutes a disability. In response to the pending motions, however, Brown has submitted no proof nor made any argument that his ankle injury constitutes a disability. The Court therefore finds this potential basis for Brown's ADA claim to be abandoned. See <u>Sanders v. Sailormen, Inc.</u>, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012).

3

2548. The nonmoving party must then "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548 (quotation and citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## Discussion and Analysis

*Disability Discrimination*

Brown claims Cooper Tire illegally discriminated against him by terminating him because of his hearing impairment. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Brown attempts to establish the alleged ADA violation with circumstantial evidence only, and thus he must navigate the familiar McDonnell Douglas burden-shifting framework in order to prove intentional discrimination. EEOC v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under this framework, Brown must first raise an inference of discrimination by establishing his prima facie case. Id. at 694 (citation omitted). If he succeeds, Cooper Tire "must

articulate a legitimate, nondiscriminatory reason" for Brown's termination. Id. Once Cooper Tire produces such an explanation, the burden shifts back to Brown to demonstrate that either (a) Cooper Tire's asserted justification is false, or (b) that even if Cooper Tire's justification is true, another motivating factor in Brown's termination was his disability. Id. at 702.

The Fifth Circuit in LHC Group recently clarified the necessary prima facie elements in an ADA discriminatory termination case. A plaintiff must demonstrate: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." Id. (citing Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)) (alteration in original). For summary judgment purposes, Cooper Tire does not contest the first two elements. It argues only that Brown cannot demonstrate a causal nexus between his hearing disability and termination. See id. at 701 (citing Zenor, 176 F.3d at 853).

The parties agree that Brown was terminated in response to the audiograms conducted by T.K. Group. Cooper Tire asserts that Brown was terminated because, based on the erratic results, it believed Brown *falsified* the audiograms, whereas Brown argues he was terminated due to the fact of his hearing impairment.

In demonstrating a causal nexus, Brown has produced reports from two different healthcare professionals, Dr. Brian McKinnon and Audiologist Stacy Sanders. Following Brown's termination, Dr. McKinnon diagnosed Brown with Cochlear Meniere's disease. According to McKinnon, Brown's test results were consistent with this disease, which "presents with low fluctuating hearing loss." Similarly, Sanders explained in a report that, based on documentation relating to Brown's hearing and the results from the audiograms performed by T.K. Group, Brown suffers from tinnitus, which causes ringing in the ears and can create

confusion between sounds attributable to tinnitus and those made by the audiogram testing equipment.

In view of these expert opinions that Brown's hearing impairment caused his unusual results, and given the fact that these results undisputedly resulted (one way or the other) in his termination, the Court finds sufficient evidence of a causal nexus between Brown's disability and termination. Therefore, Brown has met his prima facie burden.

Goodson testified that he terminated Brown for falsifying hearing tests, and it is clear from the peer review transcript that he maintained that position while testifying at Brown's hearing. Attempting to demonstrate that this asserted justification is pretextual, Brown argues that Goodson's belief of falsified tests initially stemmed from Hauss, and that her report and testimony has faced substantial contradiction. Hauss' report, according to Goodson, was that T.K. Group technicians told her Brown's results were falsified. The four technicians on site at Cooper Tire each denied making such a representation to Hauss.

Goodson argues that Hauss' allegedly false report is irrelevant to whether Cooper Tire, acting through its decisionmaker Goodson, engaged in disability-based discrimination. However, the actions of a manager or co-employee may be imputed to the decisionmaker via the cat's paw theory of liability. See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 366 & n.11 (5th Cir. 2013) ("[A] subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior . . . ."); EEOC v. DynMcdermott Petroleum Operations Co., 537 F. App'x 437, 443 (5th Cir. 2013) (citation omitted) ("[T]he discriminatory animus of a manager can be imputed to the ultimate decisionmaker . . . ."). Such imputation is proper under this theory if the plaintiff is able to demonstrate that another employee (1) harbored discriminatory animus, and (2) "possessed

leverage, or exerted influence, over the titular decisionmaker." Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000)).

As discussed above, Hauss allegedly misrepresented the erratic test results—which Dr. McKinnon and Audiologist Sanders attribute to Brown's hearing disability—to the decisionmaker Goodson, thereby creating a factual issue as to whether Hauss exhibited disability-based animus. In turn, Goodson conducted a subsequent investigation into Brown's conduct, including, among other things, consultation with Hauss. Goodson testified that he terminated Brown "purely based off what the T.K. Group told us about the hearing test that was taken" and that he never personally spoke to the T.K. Group employees, but relied on Hauss' representation of her conversations with the technicians. Additionally, at the peer review hearing, Goodson and Tim White each testified, against Brown, about Hauss' conversations with T.K. Group. The only other person who testified against Brown at the hearing was Hauss.

Although, as Cooper Tire notes, the connection between the allegedly biased employee and the allegedly discriminatory employment decision may be severed by "an independent investigation fairly conducted," Schuh v. Town of Plantersville, Miss., 2014 WL 4199271, at *10 (N.D. Miss. Aug. 22, 2014), "[t]he degree to which [the final decisionmaker's] decisions were based on his own independent investigation is a question of fact." Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002) (quotation omitted) (alteration in original). For these reasons, the Court finds that Brown has created a genuine issue of material fact as to disability discrimination. Cooper Tire's Motion for Summary Judgment [64] is DENIED.

*Tortious Interference with Contract*

Brown next pursues a claim of tortious interference with contract against T.K. Group, arguing that the company's technicians caused his termination by communicating to Monica Hauss that he falsified his hearing tests.[2] To prove his claim of tortious interference with contract against T.K. Group, Brown must demonstrate:

> (1) that [T.K. Group's] acts were intentional and willful; (2) that they were calculated to cause damage to [Brown] in [his] lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of [T.K. Group] (which constitutes malice); and (4) that actual damage and loss resulted.

Coleman & Coleman Enters., Inc. v. Waller Funeral Home, 106 So. 3d 309, 315-16 (Miss. 2012) (quoting Par Indus., Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998)). Brown must also show that he and Cooper Tire shared an enforceable obligation that would have been performed if not for the alleged interference by T.K. Group. Id.

<u>Intentional and Willful</u>

As to the first element of intent and willfulness, the Mississippi Supreme Court has explained that "a showing of specific intent is not required." Id. Instead, the requisite mental state may be inferred so long as the defendant (1) "knows a contract exists between two parties[,]" (2) "does a wrongful act" and (3) "is certain or reasonably certain" that such act will interfere with the contract. Id. at 316 (quoting Neider v. Franklin, 844 So. 2d 433, 437 (Miss. 2003)).

Even assuming that Brown has established knowledge and wrongfulness, there is no evidence that T.K. group technicians were reasonably certain that an interference with Brown's employment would result from their alleged communications with Hauss. Three of the four

---

[2] The Mississippi Supreme Court has held that a claim for tortious interference with contract may be premised on an at-will employment relationship. Levens v. Campbell, 733 So. 2d 753, 760 (Miss. 1999).

8

technicians testified that Hauss was T.K. Group's contact person at Cooper Tire and that they understood Hauss to have administrative responsibilities with respect to the audiograms. However, nothing suggests they believed that Hauss had the capacity to suspend, terminate, or effect any other adverse employment action against Brown, and there is no evidence that she possessed such capacity. Additionally, during the conversations in which the technicians allegedly indicated that Brown was "going click, click, click, click," there is no indication that any of the technicians understood Brown's employment with Cooper Tire to be at stake. Indeed, the purpose of T.K. Group's presence at Cooper Tire and the technicians' interactions with Hauss was to conduct OSHA mandated hearing tests for the ultimate protection of the *employees*, not to uncover employee misconduct. See 29 C.F.R. § 1910.95. There is no evidence suggesting that, by allegedly communicating the erratic test results to Hauss, the technicians were *reasonably certain* that Brown would be terminated. See Coleman & Coleman Enters., Inc., 708 So. 3d at 316. Hence, the Court finds that Brown has failed to create a genuine issue of material fact on the element of intent and willfulness.

      Calculated to Cause Damage

Additionally, to demonstrate the second element of tortious interference with contract—that T.K. Group's actions were calculated to cause damage—Brown merely asserts that Hauss' testimony permits the jury to find that the technicians "either knew, or should have known that accusing a person of falsifying a hearing test is a serious charge, and could cause that person to lose his job."

The Mississippi Supreme Court was faced with a similar argument in Hollywood Cemetery Ass'n v. Bd. of Mayor and Selectmen of City of McComb, 760 So. 2d 715, 720 (Miss. 2000). There, the City of McComb decided to repeal the plaintiff's right to open and close

graves, an activity that had provided the plaintiff with a significant portion of its income. Id. at 717. The plaintiff argued that the element of calculation was established because the City "knew that its actions would injure [the plaintiff]." Id. at 720. But the Court held that "[t]he City's mere knowledge of a detrimental effect on [the plaintiff] does not constitute evidence that its actions were calculated to cause damage." Id. Applying that principal here, even if the T.K. Group technicians had knowledge that Brown's termination would result from their actions (a fact far from established), such knowledge would be insufficient to demonstrate that T.K. Group's conduct was *calculated* to cause loss.

The Court accordingly finds that Brown has failed to produce sufficient evidence for purposes of the first two elements of tortious interference with contract. Summary judgment on this claim is, therefore, GRANTED.

*Negligence*[3]

Brown also brings a negligence claim against T.K. Group based upon the same conduct giving rise to his tortious interference claim. To maintain a negligence cause of action, Brown must establish (1) that T.K. Group owed him a legal duty, (2) that it breached that duty, (3) that the breach proximately caused Brown's alleged injury, and (4) that damages resulted therefrom. Watson Quality Ford, Inc. v. Casanova, 999 So. 2d 830, 835 (Miss. 2008).

The Mississippi Supreme Court has stated that "[w]hether a duty exists in a negligence case is a question of law to be determined by the court." Enter. Leasing Co. S. Cent. v. Bardin, 8 So. 3d 866, 868 (Miss. 2009) (quoting Brown v. J.J. Ferguson Sand & Gravel Co., 858 So. 2d 129, 131 (Miss. 2003)) (alteration in original). In negligence cases, the defendant has a duty to

---

[3] Out of an abundance of caution, the Court requested and received additional briefing regarding whether negligence may be a legally viable cause of action in the instant case, where the damages requested flow from the termination of an employment contract. After considering the parties' briefing and relevant Mississippi law, the Court is persuaded that this inquiry is unnecessary at the summary judgment stage.

exercise reasonable care. <u>Eli Inves., LLC v. Silver Slipper Casino Venture, LLC</u>, 118 So. 3d 151, 154 (Miss. 2013). Thus, T.K. Group was required to act "as a reasonable and prudent [company] would have under the same or similar circumstances." <u>Id.</u> (quoting <u>Donald v. Amoco Prods. Co.</u>, 735 So. 2d 161, 175 (Miss. 1999)).

To prove breach of this general duty, Brown must demonstrate that T.K. Group failed to exercise the reasonable care required. <u>McDonald v. Mem'l Hosp. at Gulfport</u>, 8 So. 3d 175, 180 (Miss. 2009). Brown highlights the fact that three out of the four technicians testified that they were not qualified to interpret tests. He argues that, notwithstanding this apparent limitation, at least two technicians accused him of falsifying hearing tests conducted in 2012.

The lone witness giving credence to this theory is Monica Hauss, who indicated at various points throughout her deposition that the technicians conveyed that Brown falsified the test results by repeatedly hitting the button. T.K. Group has filed a Motion to Strike [82] much of Hauss' testimony regarding her communications with the T.K. Group technicians, arguing *inter alia* that she answered in response to a leading and compound question. <u>See</u> FED. R. EVID. 611(a), (c). However, viewing Hauss' deposition testimony as a whole, the Court finds a genuine issue for trial as to whether the technicians conveyed to Hauss that Brown falsified his tests.

Moreover, regardless of any merit that T.K. Group's objections to question format may have, trial provides the best forum for the Court to exercise its discretion in enforcing Federal Rule of Evidence 611. The Court finds that to grant summary judgment, simply for the reason that answers may have been given in response to objectionable question format, would be unwarranted here. <u>See</u> <u>Veillon v. Exploration Servs., Inc.</u>, 876 F.2d 1197, 1200 (5th Cir. 1989) ("A district judge has the discretion to deny a Rule 56 motion even if the movant otherwise successfully carries its burden of proof if the judge has doubt as to the wisdom of terminating the

case before a full trial."). For these reasons, T.K. Group's Motion to Strike [82] is DENIED, and the Court finds a question of fact as to whether the technicians' alleged communications to Hauss constituted a breach of T.K. Group's duty of reasonable care.

To establish the next element of negligence, proximate cause, Brown must show that T.K. Group's "conduct was the cause in fact and the legal cause of the plaintiff's injury." Huynh v. Phillips, 95 So. 3d 1259, 1263 (Miss. 2012) (quoting Glover ex rel. Glover v. Jackson State Univ., 968 So. 2d 1267, 1277 (Miss. 2007)). "Cause in fact means that, but for the defendant's negligence, the injury would not have occurred." Id. Legal cause means the injury "is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." Id.

According to Goodson, Hauss reported that the technicians informed her that Brown falsified two tests. And as stated previously, Goodson testified that he decided to terminate Brown "purely" for this reason. In view of this direct testimony, the Court finds sufficient evidence creating a jury question as to whether T.K. Group's conduct was the cause in fact of Brown's termination.

With regard to legal cause or foreseeability, the technicians' alleged communications were made to Hauss, who at least three of the four technicians understood to be their primary contact person from Cooper Tire, and who they understood had responsibilities relating to the administration of the hearing tests. As discussed above, for purposes of Brown's tortious interference claim, the mere fact that Hauss was a Cooper Tire representative does not create an issue of fact as to whether the technicians were "reasonably certain" that Brown would be terminated. Nonetheless, the Court finds that whether Brown's termination was a *foreseeable* consequence of their alleged communications to Hauss presents a question for the jury. See Am.

Nat. Ins. Co. v. Hogue, 749 So. 2d 1254, 1259 (Miss. Ct. App. 2000) (citing Lyle v. Mlandinich, 584 So. 2d 397, 399 (Miss. 1991)) ("Foreseeability and breach of duty are issues to be decided by the factfinder once sufficient evidence is submitted.").

Accordingly, the Court finds a genuine issue of material fact as to each of the disputed elements of negligence. T.K. Group's request for summary judgment on this claim is DENIED.

## Conclusion

For the foregoing reasons, Cooper Tire's Motion for Summary Judgment [64] is DENIED, and T.K. Group's Motion for Summary Judgment [66] is GRANTED IN PART and DENIED IN PART. Brown's ADA and tortious interference claims against T.K. Group are dismissed, but his remaining claims survive. A separate order to that effect shall issue this day.

SO ORDERED, this 22nd day of July, 2015.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**